# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
Court File: 16–CV–(/)

| | |
|---|---|
| Terrance A. Pettis, and<br>Maikijah A. Ha' Keem<br><br>　　　　Plaintiffs,<br><br>V.<br><br>Dana Osborne; Clinical Supervisor;<br>Jordan W. Goodman, Assistant Group Supervisor (AGS);<br>Nathan A. Johnson, Assistant Group Supervisor (AGS);<br>Susan Johnson, Officer of the Day (OD);<br>Jana Korby Brister, Primary Therapist (PT);<br>Ronald Fisher, Officer of the Day (OD);<br>Courtney J. Menten, Clinical Therapist;<br>Kelli Bodie-Miner, MSW, LISCW; Joe Mullen, Clinical Supervisor;<br>Lori Aldrin, Officer of the Day (OD);<br>Randal P. Gordon; Group Supervisor (GS);<br>Andrea Kosloski; Officer of the Day (OD);<br>Justin Joslin; Assistant Group Supervisor (AGS),<br><br>SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.<br><br>　　　　Defendants. | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983**<br><br>RECEIVED BY MAIL<br>JUL -8 2016<br>CLERK, U.S. DISTRICT COURT<br>ST. PAUL, MN |

SCANNED
JUL 0 8 2016
U.S. DISTRICT COURT ST. PAUL

## INTRODUCTION

1. This is a Civil Rights Action filed by Plaintiffs who are involuntarily civilly committed to the care and custody of the State of Minnesota, Department of Human Services ("DHS") at the Minnesota Sex Offender Program ("MSOP") for an indeterminate term.

2. Defendants, employees of DHS/MSOP, deprived Plaintiffs of their Federal Constitutional rights. Plaintiffs allege the placement and restrictions in the High Security Area (HSA), are unconstitutional, restrictive and were imposed as punishment without substantive and procedural due process. Plaintiffs seeks monetary, compensatory, declaratory and injunctive relief. Defendants, under the Color of State Law, deprived Plaintiffs of their rights, privileges and immunities secured by the Fourth (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due process) rights to the United States Constitution.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §343(a) (3) as Plaintiffs allege, pursuant to 42 U.S.C. §1983, Defendants under Color of State Law, deprived Plaintiffs of their rights, privileges and immunities secured by the Fourth (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due process) rights to the United States Constitution. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiffs claims which affirmatively state Defendants deprived them of their rights under the United States Constitution. Such claims are so related to this §1983 claims they form part of the same

case and controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as Defendants reside in this District and the events and omissions giving rise to the claims occurred in this District.

## DECLARATORY AND INJUNCTIVE RELIEF

5. This Court has authority to grant compensatory and declaratory relief pursuant to 28 U.S.C §2201 as an actual controversy exists regarding the rights, privileges and immunities to which Plaintiffs are entitled. Moreover, pursuant 28 U.S.C. §2201, this Court has authority to grant injunctive relief and any other necessary and proper relief that is deemed just and proper by the Court.

## PARTIES

6. Plaintiffs have been involuntarily and illegally civilly confined indefinitely in the Minnesota Sex Offender Program (MSOP) under a Minnesota State law recently ruled unconstitutional on its face and as applied by this court.

7. Defendants are as follows:

   (a)  The Department of Human Services is the agency responsible for overseeing the running of the State Hospitals and protecting the patients' rights and as such is responsible for policies, procedures, and practices implemented through its various agencies. The Commissioner of the DHS is not a party to this action.

   (b)  Dana Osborne; who is a Clinical Supervisor; is an employee of the Minnesota Sex Offender Program, primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452

(b) Justin Joslin; Assistant Group Supervisor, and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(c) Andrea Kosloski; Officer of the Day (OD), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(d) Randal P. Gordon; Group Supervisor (GS), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(e) Lori Aldrin, Officer of the Day (OD), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(f) Joe Mullen, Clinical Supervisor (CT), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(g) Kelli Bodie-Miner, MSW, LISCW; and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(h) Courtney J. Menten, Clinical Therapist (CT), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(i) Ronald Fisher, Officer of the Day (OD), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(j) Jana Korby Brister, Former Primary Therapist (PT), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(k) Susan Johnson, Officer of the Day (OD), and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(l) Nathan A. Johnson, Assistant Group Supervisor (AGS); and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

(m)    Jordan W. Goodman, Assistant Group Supervisor (AGS); and is primarily located at: 1111 Highway 73, Moose Lake, Minnesota 55767-9452.

## COMPLAINT

8.     At all times relevant in the complaint, Defendants were/are employees of DHS/MSOP.

9.     On November 4, 2013, an incident report was written by Security Counselor Mark Pivoran. The report stated the following: *"On Monday November 4, 2013 at 11:56 an ICS (Incident Command System) was called on unit 1E for clients fighting. When we arrived clients were heading back to their rooms. When we arrived back on the units we were told that Ha'Keem needed to go to HSA for his involvement. Dana Osborne went with us to talk to Hakeem. Hakeem complied to HSA placement we applied restraints escorted him to HSA."* No other information or documentation was provided or available to support Ha'Keem's placement in HSA for four days. Defendants, in their individual and official capacity, implemented, retained and carried out policies through the MSOP that violated Ha'Keem's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process, substantive due process and due process) rights.

10.    On November 4, 2013, Security Counselor Jane Stinar wrote an incident report regarding placement in HSA of Plaintiff Ha'Keem. The report stated the following: *"I (Jane) was standing next to the desk with unit supplies. I (Jane) called the ICS at this time (11:56am). As the A-Team was coming on the unit the clients were asked to return to their rooms. I (Jane) took the incident commander then. The OD office called and said that they reviewed the tape and that client Ha'Keem was seen on tape hitting client*

5

*(blacked out) on the head area. We were informed that client Ha'Keem will need to go to HSA also. (space blacked out). Dana Osborne went up to Ha'Keem room (205) and let him know that after viewing the tape he was also going to HSA. Client Ha'Keem was placed in HSA at 12:26pm in room 109. The ICS was called at 11:56am and was all cleared at 12:34pm."* Per MSOP policy, Plaintiff Ha'Keem could not be placed in HSA for more than 24 hours, less a criminal investigation and/or a police agency has investigated the situation, and decided to either charge the "client" or not charge the "client." *See infra.* Defendants, in their individual and official capacities, implemented, retained and carried out policies through the MSOP that violated Ha'Keem's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process, substantive due process and due process) rights were violated.

11. Defendants Susan Johnson, Jordan Goodman, Nathan A. Johnson, Dana Osborne, Justin Joslin are being sued as they approved HSA placement of Plaintiff Ha'Keem on November 4, 2013, were Ha'Keem was kept in HAS for four (4) days (3 days past the 24 hours stated in Defendants policy). No less restrictive alternatives were considered. Defendant Susan Johnson approved the incident reports. Defendants, Susan Johnson, Jordan Goodman, Nathan A. Johnson, Dana Osborne, Justin Joslin in their individual and official capacity, implemented, retained and carried out policies through the MSOP that violated Ha'Keem's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due process) rights.

6

12.     Defendants Jana Korby Brister, Ronald Fischer, Joseph Mullen, Courtney Menten, Kellie Bodie-Miner, Lori Aldrin, Randal Gordon, Andrea Kosloski, Justin Joslin, are being sued as they approved HSA placement of Plaintiff Pettis in on December 26, 2014 through January 5, 2015. Defendants Lori Aldrin, Ron Fischer, Randal Gordon, Andrea Kosloski, Justin Joslin, approved the incident reports. Defendants, Lori Aldrin, Ron Fischer, Randal Gordon, Andrea Kosloski, Justin Joslin in their individual and official capacity, implemented, retained and carried out policies through the MSOP that violated Pettis's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due process) rights.

13.     All named Defendants authorized HSA placement of both Plaintiffs. Per MSOP policy, "clients" placed in HSA for more than 24 hours, must be released within 72 hours, unless a police agency investigated and charged the "client" with a crime. Plaintiffs were released from HSA, however, after spending several days in HSA. Because MSOP Policy is clear as police agency did not begin investigation of a suspected crime within seventy-hours of receiving a report of an alleged crime. The placement in HSA of Plaintiffs for several days, was for no reason other than to punish. Because Plaintiffs are in custody, however, are not in prison (not serving a prison sentence), their status is much like that of a pre-trial detainee. The Supreme Court has held that pre-trial detainees cannot be "punished" without being afforded the protections of due process of law. Defendants, in their individual and official capacity, implemented, retained and carried out policies through the MSOP that violated Plaintiff's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due

process) rights.

14. Once in HSA, Defendants continued the placement of Plaintiff Pettis for approximately 14-days without due process. While in HSA, neither Plaintiff had access to their property and had limited movement out of their cells (except for showers, telephone calls, which is for 1-hour a day out of their cell). Defendants, in their individual and official capacity, implemented, retained and carried out policies through the MSOP that violated Pettis's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due process) rights.

15. Plaintiffs were handcuffed and escorted to HSA by A-team staff. Once in HSA, Plaintiffs were given a directive to comply with an unclothed visual body search or be placed in a HSA cell, and handcuffed (for up to 4 hours) until they complied with the strip search. If they refused the strip search after the 4 hour mark, they would be checked on every 30-minutes to see if they would comply with the unclothed visual body search (UVBS). Plaintiffs disagreed with the strip search, but complied to avoid having to enduring the handcuffs for any longer than was necessary to be placed in HSA. Plaintiffs were wanded with a metal detector, pat searched, and forced to strip naked in front of MSOP security counselors. Once released from HSA placement, Plaintiffs were placed on Administrative Restriction Status (AR) with no justifiable reason(s). Defendants, in their individual and official capacity, implemented, retained and carried out policies through the MSOP that violated Plaintiff's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due process) rights.

16.     Per MSOP policy, Defendants did not consider less restrictive placement, other than HSA. Less-restrictive placement includes, but is not limited to: Omega-1, Omega-2, Omega 3, or another unit (separate units in either the main building or the Complex). (Where one is limited to the movement outside of his or her room, no off unit movement, except for emergency reasons (health services, etc.), may request to take a shower, clean their room, make phone calls etc.). Defendants, in their individual and official capacity, implemented, retained and carried out policies through the MSOP that violated Plaintiff's Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (procedural due process and substantive due process) rights.

**Relevant MSOP Policies**

17.     Under MSOP policy, in order to place a patient in the HSA, they must be on AR Status. AR Status may be considered when the patient is suspected of committing a crime or charged with a crime, the subject of a criminal investigation, awaiting sentencing following conviction of a crime, or awaiting transfer to a correctional facility. Policy 301.084. In order to initiate AR Status, the unit supervisor contacts the officer of the day who then calls the Office of Special Investigations ("OSI") to establish any recommended restrictions to protect the investigation or prevent the continuation of any suspected criminal acts and then calls the assistant facility director to request authorization. *Id.* Within 24 hours of the client being placed on AR Status, OSI must be notified, the client's attorney or record must be notified, and the client must be given written notice of the AR Status authorization and the AR Plan. *Id.* OSI must then inform law enforcement within 24 hours of the patient being placed on AR status on suspicion of having

9

committed a crime. *Id.*

18.  The AR Status Authorization must include specific facts that require the need for AR Status, the specific safety or security concerns, the completion of required notifications, the name of the staff member who requested AR Status, the name of the staff member who authorized AR Status, and the process to request a review of the AR Status. A copy of this is supposed to be sent to the patient's attorney on file. *Id.*

19.  No later than 24 hours after placement on AR Status, the primary therapist or officer of the day, in consultation with OSI and the unit supervisor, will develop a written AR Status Plan that includes the reason for placement on AR, what measures will be imposed, the behavioral expectations that may result in a change of placement while on AR Status, and the access to treatment that will be available. *Id.*

20.  Patients have a right to appeal their AR Status and any conditions imposed as a result of that status to the MSOP Facility Director, but the decision of the Facility Director cannot be appealed. *Id.*

21.  AR Status is discontinued if a police agency does not begin an investigation within 72 hours of the report, if law enforcement notifies the MSOP that the patient will not be charged with a crime, if the patient is transferred to the Department of Corrections, or if the MSOP Assistant Facility Director determines AR Status is no longer necessary to maintain safety and security. *Id.*

22.  When a patient is placed in HSA, MSOP policy requires them to submit to an unclothed visual body search. Policy 301.087.(Re-numbered to 415-5087, Issue Date: 4/5/16 Effective Date: 5/3/16) Pursuant to MSOP policy, strip searches will be conducted

in a manner avoiding unnecessary force, embarrassment or indignity to the patient and will be performed by two or more staff of the same gender as the patient. Policy 301.010. If the patient agrees to the strip search, the patient is allowed to remove his own clothing and the staff then visually inspects the patient. *Id.*

23.     If the patient does not consent to the strip search, staff must first address the patient's concerns and consult with clinical staff. Staff will then ask the patient every 30 minutes if they will comply with the search. After four hours in the HSA, the staff needs to get authorization from the MSOP Facility Director and MSOP Central Office for a non-consenting search. *Id.* Before the MSOP Central Office on-call staff approves a forceful strip search, they consider the amount of clothing currently worn by the patient that can conceal contraband, whether the client is under Levels of Observation, whether the patient passed initial metal detection, the patient's history of hiding contraband on his person, and other relevant factors that weigh for or against the need for a strip search. *Id.* If the strip search is authorized, the search takes place after staff controls the client, a video camera is brought in to document the search, and clothing is cut off using a scissors. *Id.*

24.     When a patient is placed in the HSA, as Plaintiffs were in this case, placement in the HSA must terminate when it is not reasonably necessary to maintain safety and security. Policy 301.087. (Re-numbered to 415-5087, Issue Date: 4/5/16 Effective Date: 5/3/16) No later than two business days after a patient is placed on AR Status in the HSA, the AR Status Review Panel will meet and review the patient's status to determine whether the placement is reasonably necessary to maintain safety and security, whether

lesser restrictions are considered and found to be insufficient to maintain safety and security, and whether the placement in HSA is for non-punitive purposes. At this time, the patient can present evidence in person to the Panel and explain why the HSA is not warranted. The Panel will consider all available and relevant information. The Panel's decision is binding on the MSOP. The patient may appeal to the MSOP's Deputy Director, whose decision is final. *Id.*

25. The MSOP's AR Status policy, as created and implemented by Defendants Nancy Johnston (former CEO of MSOP), and Kevin Moser, does not require any specific evidence to be provided or given to patients prior to placing them in isolation in the HSA.

26. Additionally, the strip search policy as created and implemented by Defendants Nancy Johnston (former CEO of MSOP), and Kevin Moser requires a strip search even when a patient has already been pat and wand searched and placed in isolation in the HSA.

## Count I
**Violation of the Due Process Clause of the Fourteenth Amendment to the United Sates Constitution as to all Defendants.**

27. Plaintiff incorporates all previous allegations as if fully set forth herein.

28. The Fourteenth Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs bring this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

29. Plaintiffs were denied due process by Defendants due to their confinement in the HSA for several days. During that time Plaintiffs were handcuffed, strip-searched, denied their property, and confined alone in a cell.

30. No documentation from Defendants were given to Plaintiffs that indicates any less restrictive alternatives to confinement in the HSA were considered, as required under MSOP policy.

31. Plaintiffs have been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### Count II
**Unreasonable Seizure in Violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution as to all Defendants**

32. Plaintiffs incorporate all previous allegations as if fully set forth herein.

33. Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." In an institutional setting, the need for the search must be balanced against the invasion of personal rights that the search entails. Plaintiffs bring this Fourth Amendment claim pursuant to 42 U.S.C. § 1983.

34. Defendants violated Plaintiffs' Fourth Amendment rights by unlawfully detaining them in the HSA for more than 24 hours (14 days for Pettis, and 4 days for Ha'Keeme) and by forcing them to comply with an unclothed visual body search.

35. These policies, procedures and practices are not related to a legitimate institutional or therapeutic interest of the Defendants.

36. The acts and omissions of Defendants constitute unreasonable seizures in violation of Plaintiffs' clearly established rights guaranteed by the Fourth Amendment of the United States Constitution and Article 1, Section 10 of the Minnesota Constitution.

37. Plaintiffs have been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## Count III
**Unreasonable Search in Violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution as to Defendants Johnston (former CEO of MSOP), and Moser**

38. Plaintiffs incorporate all previous allegations as if fully set forth herein

39. Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." In an institutional setting, the need for the search must be balanced against the invasion of personal rights that the search entails. Plaintiffs bring this Fourth Amendment claim pursuant to 42 U.S.C. § 1983.

40. Defendants violated Plaintiffs' Fourth Amendment rights by unlawfully strip searching them. The MSOP's strip search policy provides for unconstitutional strip searches.

41. These policies, procedures and practices are not related to a legitimate institutional or therapeutic interest of the Defendants.

42. The acts and omissions of Defendants constitute unreasonable searches in violation of Plaintiffs' clearly established rights guaranteed by the Fourth Amendment of the United States Constitution and Article 1, Section 10 of the Minnesota Constitution.

**CLAIMS FOR RELIEF**

43.     Plaintiffs incorporate Paragraphs 1 through 42 above by reference in their claims for relief.

44.     Defendants acting under color of State Law, including but not limited to the policies and procedures thereto, deprived Plaintiffs of their rights privileges and immunities secured by the Constitution of the United States.

45.     Plaintiffs have been and continue to be injured as a direct and proximate result of violations of their constitutional rights:

(a)     the unlawful conduct alleged herein be declared to be illegal and in violation of the federal constitutional claims alleged herein;

(b)     that the Court order Defendants to case the use of strip searches;

(c)     that Defendants be enjoined from engaging in the same or similar practices alleged herein;

(d)     That Plaintiffs recover actual and/or nominal damages, as provided by law, and that judgment be entered against Defendants on behalf of Plaintiffs;

(e)     That Plaintiffs receive pre-judgment and post-judgment interest as allowed by law;

(f)     That Plaintiffs recover the costs of this suit, attorney's fees and expenses as allowed by law; and

(g)     All other relief allowed by law and equity.

## V.     RELIEF

A.     All appropriate declaratory and injunctive relief declaring the Constitutional rights to which Plaintiffs are entitled.

B.   Judgment in favor of Plaintiffs against Defendants, jointly and severally, for damages in amounts to be determined at trial.

C.   Such additional relief as the Court may deem just and appropriate.

D.   Plaintiffs requests a jury trial in this matter.

E.   If relief is not Granted, Plaintiffs will continue to suffer past, present and future irreparable harm by Defendants.

I (We) hereby certify under the penalty of perjury that the above petition is true to the best of my (our) information, knowledge and belief.

| SWORN AND SUBSCRIBED TO ME ON THIS 15th DAY OF June 2016 | RESPECTFULLY SUBMITTED |
|---|---|
| _____ NOTARY | _____ Pro Se Terrance A. Pettis 1111 Highway 73 Moose Lake, Minnesota 55767-9452 |
| SWORN AND SUBSCRIBED TO ME ON THIS 15th DAY OF June 2016 | RESPECTFULLY SUBMITTED |
| _____ NOTARY | _____ Pro Se Maikijah A. Ha' Keem 1111 Highway 73 Moose Lake, Minnesota 55767-9452 |

DENISE MICHELE FISHER
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2018

16